IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES,<br><br>        Plaintiff,<br><br>   vs.<br><br>TITUS SOS, JR.,<br><br>        Defendant. | CR. NO. 19-00066 JAO<br><br>ORDER DENYING DEFENDANT'S MOTION TO REDUCE SENTENCE PURSUANT TO 18 U.S.C. § 3582(C)(1)(A)(i) |

**ORDER DENYING DEFENDANT'S MOTION TO REDUCE SENTENCE PURSUANT TO 18 U.S.C. § 3582(C)(1)(A)(i)**

Defendant Titus Sos, Jr. ("Defendant") filed a Motion to Reduce Sentence ("Motion"), seeking compassionate release pursuant to 18 U.S.C. § 3582. ECF No. 66. The Court decides the Motion without a hearing pursuant to Local Rule 7.1(c). For the following reasons the Motion is DENIED WITHOUT PREJUDICE.

I.    BACKGROUND

    A.    Procedural History

On July 22, 2019, Defendant pleaded guilty to an Indictment that charged him with bank robbery, a violation of 18 U.S.C. § 2113(a). ECF No. 24. On December 20, 2019, the Court sentenced him to thirty-seven months' imprisonment, which was at the low end of the Sentencing Guidelines range, and

three years of supervised release.  ECF Nos. 51, 55.  The Court also ordered

restitution of $2,673.00 be paid to American Savings Bank.  ECF No. 55.

Defendant is currently incarcerated at the Federal Correctional Institution in

Lompoc, California ("FCI Lompoc"), one of four facilities within the Lompoc

Federal Correctional Complex ("Lompoc Complex").  *See* Federal Bureau of

Prisons, "USP Lompoc," https://www.bop.gov/locations/institutions/lom/ (last

visited July 23, 2021); Federal Bureau of Prisons, "FCI Lompoc,"

https://www.bop.gov/locations/institutions/lof/ (last visited July 23, 2021).  He is

expected to be released on July 28, 2022.  ECF No. 66-4 at 1; *see* Federal Bureau

of Prisons, https://www.bop.gov/inmateloc/ (follow "Find By Name" tab; then

search for "Titus Sos") (last visited July 23, 2021).

In December 2020, Defendant wrote to the Complex Warden requesting

compassionate release "due to his health issues and the Covid-19 pandemic."[1]

ECF No. 66-4 at 7.[2]  He received no response.  *Id.*  He requested compassionate

release again in April 2021, noting that "his chronic kidney disease, epilepsy, and

---

[1] The record is unclear as to whether the "Complex Warden" refers to the warden of FCI Lompoc or the Lompoc Complex.  *See* ECF No. 66-5.

[2] Defendant does not have a record of his first written request for compassionate release.  ECF No. 66-4 at 7.  The Government does not contest Defendant's account.  ECF No. 71 at 10–11.  The Court finds no reason to doubt the veracity of Defendant's statement.

obesity" make him "more vulnerable to becoming seriously ill" from the virus. *Id.* (citing ECF No. 66-5). He again received no response. *Id.*

On May 27, 2021, Defendant filed the instant Motion, ECF No. 66, as well as a Motion to Seal his medical records, ECF No. 67.[3] With the Court's permission, Defendant filed his medical records under seal two weeks later. ECF Nos. 69, 70. The Government filed a Response to Defendant's Motion for Reduction of Sentence on June 17, 2021. ECF No. 71. Defendant did not file a reply.

//

//

//

//

//

//

//

---

[3] The Government did not oppose Defendant's Motion to Seal his medical records but did note its intention to file publicly Federal Bureau of Prison records regarding Defendant's medical conditions that are the subject of his Motion for Reduction in Sentence, absent contrary direction from the Court. ECF No. 68 at 2–3. The Court declined to provide any advisory ruling but reminded the Government to comply with Local Rule 5.2 concerning the public filing of confidential matters. ECF No. 69. Subsequently, the Government did not publicly file additional medical records.

B.  Defendant's Background

1.  Defendant's Current Condition

Defendant, who is twenty-three years old, suffers from stage two chronic kidney disease[4] and obesity, with a Body Mass Index ("BMI") of over 30.0.[5]  ECF No. 66-4 at 9; ECF No. 70 at 57, 96, 137.  Defendant has also struggled with epilepsy ▮.[6]  ECF No. 66-4 at 1, 9; ECF No. 70 at 57, 96, 137.  He takes prescribed antiepileptic medication to prevent seizures.[7]  ECF No. 66-4 at 9; *see, e.g.*, ECF No. 70 at 2, 96.  Defendant is fully vaccinated ▮

---

[4] There are five stages of chronic kidney disease ("CKD"); at stage two, a patient has mild kidney damage.  *See* UCLA Health, "What is CKD?" https://www.uclahealth.org/core-kidney/chronic-kidney-disease-ckd-1107 (last visited July 23, 2021).

[5] A BMI of 30.0 or higher is considered obese.  Ctrs. for Disease Control & Prevention ("CDC"), "Defining Adult Overweight and Obesity," https://www.cdc.gov/obesity/adult/defining.html (last visited July 23, 2021).

[6] Epilepsy is neurological disorder "in which brain activity becomes abnormal, causing seizures or periods of unusual behavior, sensations, and sometimes loss of awareness."  *Epilepsy: Symptoms & Causes*, Mayo Clinic, https://www.mayoclinic.org/diseases-conditions/epilepsy/symptoms-causes/syc-20350093 (last visited July 23, 2021).

[7] Defendant is prescribed Keppra and/or Levetiracetam to prevent seizures.  ECF No. 66-4 at 9; *see, e.g.*, ECF No. 70 at 2, 96.  Levetiracetam is the generic name of Keppra.  *See* Mayo Clinic, "Levetiracetam (Oral Route)," https://www.mayoclinic.org/drugs-supplements/levetiracetam-oral-route/description/drg-20068010 (last visited July 23, 2021).

██████████████████████████████████████████████████

█████████████████████. ECF No. 66-4 at 12; ECF No. 70 at 187–88.

  2. Defendant's History and Post-Sentencing Behavior

Defendant's crime involved threatening a teller at American Savings Bank with violence via a note and stealing $2,673.00 from the branch. ECF No. 66-4 at 2–3. ████████████████████████████████████

████████████████████████████████████████████████

█████████████████████████████████ ECF No. 51 ¶ 16. █████

█████████████████████ *Id.* ¶¶ 31–38. Before sentencing, he consumed alcohol in violation of his bail conditions, but ████████████████████████ no action was taken. ECF Nos. 28, 32; ECF No. 51 ¶ 6. While incarcerated, Defendant "goes to class" every day to "keep himself busy" though he has already earned a G.E.D and avers that he "has been sober since pre-trial release." ECF No. 66-4 at 18.

  C. Conditions at FCI Lompoc

FCI Lompoc has zero active cases among inmates or staff as of this writing. *See* Federal Bureau of Prisons, https://www.bop.gov/coronavirus/ (scroll to "COVID-19 Cases"; click on "Full breakdown and additional details") (last visited July 23, 2021). Over the course of the pandemic, however, three inmates have

died, *id.*, and the facility has suffered a 70.37% positivity rate,[8] *see* Federal Bureau of Prisons, https://www.bop.gov/coronavirus/ (scroll to "COVID-19 Inmate Test Information"; click on "Learn more about the data and view individual facility stats") (last visited July 23, 2021) (indicating 739 inmates have completed testing and 520 had positive results).

II.   DISCUSSION

    A.   The First Step Act

Prior to the passage of the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194 ("First Step Act"), only the BOP could move for an inmate's compassionate release. *See* 18 U.S.C. § 3582(c)(1)(A) (2012). But the First Step Act amended, among other things, 18 U.S.C. § 3582(c)(1)(A), which now allows inmates to seek compassionate release:

> [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or

---

[8] The Government and Defendant provide slightly different statistics than the Court. *See* ECF No. 66-4 at 12 (stating that 788 inmates have been tested and 560 have tested positive); ECF No. 71 at 6 (598 have tested positive). The Federal Bureau of Prisons reports statistics on the number of inmates currently at each facility who have tested positive at the site or a prior facility. *See* Federal Bureau of Prisons, https://www.bop.gov/coronavirus/ (scroll to "COVID-19 Inmate Test Information"; click on "Learn more about the data and view individual facility stats") (last visited July 23, 2021). The number of active cases reported at each facility often changes daily because inmates are released or transferred. The minor differences among the statistics cited by the Court, Defendant, and Government are likely due to these fluctuations and do not affect the Court's analysis.

>the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that –
>
>>(i) extraordinary and compelling reasons warrant such a reduction; . . .
>>*and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission*[.]

18 U.S.C. § 3582(c)(1)(A) (2018) (emphasis added).  United States Sentencing Guidelines ("USSG") section 1B1.13 ("the Guideline") addresses Section 3582 motions, but the Sentencing Commission has not updated the Guideline since the passage of the First Step Act.[9]  The Guideline allows for a sentence reduction for compassionate release "[u]pon motion of the Director of the Bureau of Prisons . . . if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that . . . extraordinary and compelling reasons warrant the reduction[.]"  USSG § 1B1.13.  It further outlines four

---

[9]  The Commission's failure to amend the Guideline is likely due to its lack of sufficient members for a quorum.  *See* U.S. Sentencing Commission, "About the Commissioners," https://www.ussc.gov/commissioners (last visited July 23, 2021) (listing only 1 voting commissioner); U.S. Sentencing Commission, "Organization," https://www.ussc.gov/about/who-we-are/organization (last visited July, 23, 2021) ("The affirmative vote of at least four members of the Commission is required to promulgate amendments to the sentencing guidelines.").

categories of extraordinary and compelling reasons in the application notes:  the defendant's medical condition, the defendant's age (at least 65 years old), family circumstances, and "other reasons."  *Id*., comment. (n.1).  This last category is known as the "catch-all" clause.  *United States v. Brooker*, 976 F.3d 228, 232 (2d Cir. 2020).  The Guideline notes also explain that the catch-all clause applies when, "[a]s determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the [other] reasons[.]"  USSG § 1B1.13, comment. (n.1).  In other words, according to the Guideline, wide discretion regarding what constitutes an "extraordinary and compelling reason" rests only with the BOP Director.

      The Ninth Circuit recently addressed the question of whether the Guideline applies to compassionate release motions brought by defendants.  In *United States v. Aruda*, 993 F.3d 797, 802 (9th Cir. 2021), the court held that the Guideline "is not an 'applicable policy statement[]' for 18 U.S.C. § 3582(C)(1)(A) motions filed by a defendant." (brackets in original).  At most, the Guideline "may inform a district court's discretion . . . but [it is] not binding." *Id*. (citation omitted).

      Unfettered by USSG § 1B1.13, the Court follows Section 3582(c)(1)(A)'s direction.

B. Whether Extraordinary and Compelling Reasons Exist Here[10]

The question before the Court is not the same question addressed at sentencing. The Court is not asked to determine whether the sentence previously imposed was "sufficient, but not greater than necessary" to comply with the factors outlined in 18 U.S.C. § 3553(a)(2), but rather, to determine whether "extraordinary and compelling reasons warrant . . . a reduction." 18 U.S.C. § 3582(c)(1). If the answer to that question is yes, then the Court is required to evaluate the Section 3553(a) factors to decide whether to reduce the incarceration term. *See* 18 U.S.C. § 3582(c)(1)(A).

1. Defendant's Health

Defendant struggles with epilepsy, chronic kidney disease, and obesity, and is fully vaccinated.[11] ECF No. 66-4 at 1, 9, 12.

a) Epilepsy

While the parties agree that Defendant struggles with epilepsy, *see* ECF No. 66-4 at 1, 9; ECF No. 71 at 17, the disorder is not on the CDC's list of conditions placing individuals at a high risk of becoming severely ill from COVID-19, nor has

---

[10] The Court finds — and it is undisputed — that Defendant has met the administrative requirements for filing the Motion.

[11] Defendant's medical records also reveal that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. ECF No. 70 at 25, 40, 156–57. However, he has not explained what impact, if any, these conditions have.

9

Defendant directed the Court to any studies indicating as much. The Court therefore declines to consider Defendant's epilepsy as a factor in its analysis.

                b)       Chronic Kidney Disease

The parties agree that Defendant suffers from stage two chronic kidney disease, but they dispute the impact of his condition on his risk for severe illness from COVID-19. *Compare* ECF No. 66-4 at 9–11 *with* ECF No. 71 at 13–15. Defendant contends that "[h]aving chronic kidney disease of any stage" increases the risk. ECF No. 66-4 at 10 (citing CDC, "People with Certain Medical Conditions," https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited July 23, 2021)).

On the other hand, the Government argues Defendant has "not establish[ed] that he has serious physical or medical conditions that substantially diminish his ability to provide self-care within the correctional facility and from which he would not be expected to recover," ECF No. 71 at 13 (citing U.S.S.G. § 1B1.13 cmt. n.1(A)) (internal quotations omitted), his condition does not affect his "ability to function," *id.*, and his condition is manageable, *id.* at 9, 14 (citing *United States v. Ayon-Nunez*, No. 1:16-CR-00130-DAD, 2020 WL 704785, at *2–3 (E.D. Cal. Feb. 12, 2020)). As such, the Government contends that COVID-19 does not "present[] a particular risk" to Defendant. *Id.* at 14.

According to the CDC, any stage of chronic kidney disease may increase the likelihood of severe illness from COVID-19.  CDC, "People with Certain Medical Conditions," https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited July 23, 2021).  Also, multiple courts have found that stage two chronic kidney disease — which is the stage of Defendant's current condition — "increase[s] the risk of severe illness from coronavirus."  *United States v. Fernandez*, No. 2:16-CR-00115-KJM, 2020 WL 5909490, at *5 (E.D. Cal. Oct. 6, 2020); *see also United States v. Hunt*, No. Cr-16-01047-08-PHX-DGC, 2021 WL 197670, at *3 (D. Ariz. Jan. 20, 2021); *United States v. Dailey*, No. 2:13-cr-00118 KJM, 2020 WL 4504449, at *2 (E.D. Cal. Aug. 5, 2020).  The Court is similarly persuaded by CDC guidance that Defendant's chronic kidney disease increases his risk of severe illness from COVID-19.

         c)     Obesity

While the parties do not dispute that Defendant suffers from obesity, the Government challenges the severity of his condition, arguing that he (1) only "presents a borderline case of obesity" and (2) his condition is "manageable."  *See* ECF No. 71 at 16–17; ECF No. 66-4 at 9.  Defendant explains that his BMI is 33.6 and cites CDC statistics that obesity heightens one's risk of severe illness,

hospitalization, and death from the virus. ECF No. 66-4 at 9, 11–12 (citing CDC, "Obesity, Race/Ethnicity, and COVID-19," https://www.cdc.gov/obesity/data/obesity-and-covid-19.html (last visited July 23, 2021)).

As to the Government's first argument, the CDC defines obesity as a BMI of 30.0 or higher, with "[o]besity frequently subdivided into categories." CDC, "Defining Adult Overweight & Obesity," https://www.cdc.gov/obesity/adult/defining.html (last visited July 23, 2021) (listing Class 1 as a "BMI of 30 to < 35," Class 2 as a "BMI of 35 to < 40," and Class 3 as a "BMI of 40 or higher"). Defendant's BMI of 33.6 is well within the Class 1 obesity range. *See* ECF No. 66-4 at 9. Courts have declined to find less risk of severe illness because a defendant's BMI is at the lower end of the BMI obesity range. *See, e.g.*, *United States v. Moon*, 501 F. Supp. 3d 731, 733 (N.D. Cal. 2020) (finding that a BMI of 30.7 increases the risk of severe illness from COVID-19); *United States v. Sexton*, No. CR11-383-RSL, 2021 WL 2255151, at *5 (W.D. Wash. June 3, 2021) (finding a BMI of 31.28 to be a factor increasing the defendant's vulnerability to the virus). The Court is similarly persuaded that a BMI of 33.6, which is within the CDC's definition of obesity, increases the risk of severe illness from COVID-19.

The Government's second argument — that Defendant's obesity is "manageable" — is similarly unconvincing. ECF No. 71 at 16–17. Obesity has

many causes, some of which are manageable, and some of which are not. *See* CDC, "Adult Obesity Causes & Consequences," https://www.cdc.gov/obesity/adult/causes.html (last visited July 23, 2021). Indeed, obese people *outside of prison* are often unable to lose weight, even with access to healthy food, exercise, and counseling. *See* CDC, "Adult Obesity Facts," https://www.cdc.gov/obesity/data/adult.html (last visited July 23, 2021). Assuming obesity is always manageable for people in prison ignores certain realities of incarceration, as well as human biology and nature.

As such, the Court finds that Defendant's obesity places him at a higher risk of severe illness if he contracted COVID-19.

d) Defendant's Immunization

Defendant is fully vaccinated, ECF No. 66-4 at 12, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Despite his immunization, Defendant maintains he is still at risk of contracting a variant of the virus. ECF No. 66-4 at 13–14. While it is currently true that anyone who is vaccinated will never be fully protected from COVID-19, Defendant's immunization weighs heavily against a finding of an extraordinary or compelling circumstance, *see United States v. Wills*, No. 3:15-cr-00465-BR, 2021 WL 2179256, at *3–4 (D. Or. May 27, 2021) (collecting cases), and he does not assert that there are any current

13

living conditions in FCI Lompoc that increase the risk of variant transmission, such as overcrowding or a lack of sanitation measures.

In sum, Defendant's chronic kidney disease and obesity are conditions which may put him at an increased risk of severe illness from COVID-19. His risk of becoming infected, however, is significantly reduced by his immunization. *See* CDC, "COVID-19 Vaccines Work," https://www.cdc.gov/coronavirus/2019-ncov/vaccines/effectiveness/work.html (last visited July 23, 2021) ("Vaccine effectiveness studies provide a growing body of evidence that mRNA COVID-19 vaccines offer similar protection in real-world conditions as they have in clinical trial settings, reducing the risk of COVID-19, including severe illness, among people who are fully vaccinated by 90 percent or more.").

      2.    Conditions at FCI Lompoc

Defendant contends that although there are currently no active cases at FCI Lompoc, more than five hundred inmates have tested positive and three have died over the course of the pandemic, suggesting "FCI Lompoc has been unable to control the spread of the virus when it has infiltrated the facility." ECF No. 66-4 at 12. In response, the Government claims Defendant's "risk of COVID-19 infection" at FCI Lompoc "cannot be appreciably higher than if he were to be released from BOP custody" and the facility "has managed to bring its COVID-19 infections under control." ECF No. 71 at 17–18.

As of July 23, 2021, more than half of the prison facilities managed by BOP reported zero or only one active COVID-19 case among inmates, including FCI Lompoc which has zero active cases. *See* Federal Bureau of Prisons, https://www.bop.gov/coronavirus/ (scroll to "COVID-19 Cases"; click on "Full breakdown and additional details") (last visited July 23, 2021). And as of July 23, 2021, 1,263 of the approximately 1,837 inmates throughout the Lompoc Complex, of which FCI Lompoc is a part, have been fully vaccinated. *See* Federal Bureau of Prisons, https://www.bop.gov/coronavirus/ (scroll to "COVID-19 Vaccine Implementation"; click on "Learn more about vaccinations and view individual facility stats") (last visited July 23, 2021).

The Court acknowledges that FCI Lompoc dealt with "one of the most serious COVID-19 outbreaks in the nation." *United States v. Zeigler*, No. 15-cr-00347-JST-1, 2020 WL 6481533, at *2 (N.D. Cal Oct. 28, 2020), *vacated in part, modified in part*, No. CR 15–00347 JST, 2020 WL 6481530 (N.D. Cal. Nov. 4, 2020) (quoting *United States v. Robinson*, No. 18-cr-00597-RS-1, 2020 WL 1982872, at *1 (N.D. Cal. Apr. 27, 2020)); *see also* Richard Winton, "70% of Inmates Test Positive for Coronavirus at Lompoc Federal Prison," *L.A. Times* (May 9, 2020), https://www.latimes.com/california/story/2020-05-09/coronavirus-cases-lompoc-federal-prison-inmates (reporting in May 2020 that the Lompoc Complex had the "largest federal penitentiary outbreak in the nation"). The

Department of Justice Office of the Inspector General ("DOJ OIG") found that a shortage of medical and correctional staff, ineffective screening process, lack of permanent leadership, "extremely limited" use of home confinement to reduce the inmate population, and physical characteristics of the facilities contributed to the outbreak throughout the Lompoc Complex.  DOJ OIG, Pandemic Response Rep. 20-086, *Remote Inspection of Federal Correctional Complex Lompoc* 3 (July 2020), https://oig.justice.gov/sites/default/files/reports/20-086_0.pdf (last visited July 23, 2021).  But the Court is persuaded that the *current* conditions at FCI Lompoc — combined with Defendant's immunization status — are such that Defendant's risk of contracting COVID-19 at the facility is low.

In sum, Defendant's current health status, in light of FCI Lompoc's current rate of infections and the Lompoc Complex's vaccination rate, does not amount to an extraordinary or compelling circumstance to consider reducing Defendant's sentence.[12]  The Court's finding is without prejudice to the possibility that, in the future, FCI Lompoc experiences another severe outbreak, a variant emerges against which Defendant's vaccination is not effective, or other circumstances change warranting reconsideration of this decision.

---

[12]  Because the Court has determined that that extraordinary and compelling reasons do not exist to warrant consideration of a reduction in sentence, it need not evaluate the Section 3553(a) factors.

III.    CONCLUSION

For the foregoing reasons, the Court DENIES the Motion WITHOUT PREJUDICE.

IT IS SO ORDERED.

DATED: Honolulu, Hawaiʻi, July 23, 2021.



Jill A. Otake
United States District Judge

Cr. No. 19-00066 JAO, *United States v. Sos*; ORDER DENYING DEFENDANT'S MOTION TO REDUCE SENTENCE PURSUANT TO 18 U.S.C. § 3582(C)(1)(A)(i)